UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jessica Csircsu

      Plaintiff

                                   Case No. 15-13808

v.                                     Hon. Sean F. Cox

Williams & Fudge, Inc.

      Defendant.

_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

      This action is brought pursuant to the Fair Debt Collection Practices Act ("FDCPA") and the Michigan Collection Practices Act ("MCPA"). Currently before the Court is Defendant's "Partial Motion for Summary Judgment." (Doc. #13, Def.'s Br.). Defendant argues that the bona fide error defense applies to this case and precludes liability as to the FDCPA violations alleged by Plaintiff. Plaintiff opposes the motion. (Doc. # 18, Pl.'s Resp.).

      The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid in the decisional process. *See* E.D. Mich. LR 7.1(f). The Court therefore orders that the motion will be decided upon the briefs. For the reasons set forth below, the Court shall **GRANT** Defendant's motion.

**BACKGROUND**

**A.    Factual Background**

      This action arises out of Plaintiff Jessica Csircsu's ("Plaintiff") failure to pay a balance and Defendants' efforts to collect on the defaulted balance. The following facts, taken in a light

1

most favorable to Plaintiff, are relatively straight forward and undisputed by the parties.

Defendant Williams & Fudge, Inc. ("Defendant") is a corporation that specializes in the recovery of accounts associated with colleges and universities.  (Doc. # 14, Def.'s Stmt. at ¶ 3; Doc. # 19, Pl.'s Stmt. at ¶ 3).  When an account is placed with Defendant, it is Defendant's policy and procedure to link that account to consumers via the consumer's social security number.  (Def.'s Stmt. at ¶ 11; Pl.'s Stmt. at ¶ 11).

On May 31, 2011, an account for Plaintiff Jessica Csircsu was placed for collection with Defendant by Education Management II, LLC ("EMII").  The account stated that Plaintiff owed a debt to the Art Institute of Michigan.  (*Id.*).  When Plaintiff's account was placed, EMII indicated that the social security number associated with the consumer began with "372." (Def.'s Stmt. at ¶ 4; Pl.'s Stmt. at ¶ 4). [1]

On or about March 13, 2012, Defendant sent a collection notice to Plaintiff.  (Def.'s Stmt. at ¶ 5; Pl.'s Stmt. at ¶ 5).  Plaintiff responded to Defendant by sending two letters, dated March 22, 2012, disputing the debt and requesting Defendant to cease all communication and collection efforts.  (Def.'s Stmt. at ¶ 6; Pl.'s Stmt. at ¶ 6).

Defendant received Plaintiff's letters on March 26, 2012 via facsimile and on March 27, 2016 via first class mail.  (Def.'s Stmt. at ¶ 7; Pl.'s Stmt. at ¶ 7; Def.'s Ex. 1 at ¶ 12).  Upon receipt, Defendant made a notation on Plaintiff's account which reflected an account status code change from "40" (active collections) to "46" (cease and desist or no contact).  (Def.'s Stmt. at ¶ 7; Pl.'s Stmt. at ¶ 7; Def.'s Ex. 1 at ¶ 12).  Defendant subsequently ceased all collection efforts on Plaintiff's account.  (Def.'s Stmt. at ¶ 7; Pl.'s Stmt. at ¶ 7).

_____

[1] This was not Plaintiff's correct social security number.

2

On or about July 7, 2015, EMII placed Plaintiff's account with Defendant for collection again. (Def.'s Stmt. at ¶ 9; Pl.'s Stmt. at ¶ 9). When EMII placed the account with Defendant for the second time, EMII listed Plaintiff's social security number as beginning with "373." (Def.'s Stmt. at ¶ 10; Pl.'s Stmt. at ¶ 10). Because EMII provided a different social security number when it placed the account, Defendant's system treated the account as "newly placed" and associated it with a new consumer. (Def.'s Ex. 1 at ¶ 20).

On or about July 8, 2015, Defendant sent a collection notice to Plaintiff. (Def.'s Stmt. at ¶ 13; Pl.'s Stmt. at ¶ 13). Plaintiff responded by sending two letters, dated July 30, 2015, disputing the debt and requesting Defendant to cease all communication and collection efforts. (Def.'s Stmt. at ¶ 14; Pl.'s Stmt. at ¶ 14). Defendant received Plaintiff's letters on August 7, 2015. (Def.'s Stmt. at ¶ 15; Pl.'s Stmt. at ¶ 15). Defendant subsequently adjusted Plaintiff's account code to cease collection efforts and it ceased collecting on the account. (Def.'s Stmt. at ¶ 15; Pl.'s Stmt. at ¶ 15).

**B.     Procedural Background**

Plaintiff originally brought this case in the General Court for the 21st Judicial District in Wayne County, Michigan. On October 28, 2015, Defendant removed this action on the basis of federal question jurisdiction. (Doc. #1).

Plaintiff's complaint asserts claims under the FDCPA (Count I) and the MCPA (Count II). Plaintiff specifically alleges that Defendant violated the following provisions of the FDCPA: 15 U.S.C. § 1692e(2)(A); 15 U.S.C. § 1692c(c); and 15 U.S.C. § 1692g(b). Plaintiff alleges that Defendant violated the following provisions of the MCPA: M.C.L. § 445.525(e); and M.C.L. § 445.252(q). Plaintiff seeks actual, statutory and treble damages along with statutory costs and

attorney fees.

Defendant filed the instant partial motion for summary judgment on August 15, 2016. (Def.'s Br.).  In it, Defendant argues that it is entitled to the *bona fide* error defense and is therefore not liable for any violation alleged under the FDCPA.

## STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1984), quoting FED. R. CIV. P. 56(C).

The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case.  *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case.  *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993).  In response, the nonmoving party must come forth with more than a "mere scintilla of evidence" in support of his or her position in order to survive summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  "In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'"  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

The court must view the evidence, all facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus.*

4

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Civil Rule 56(c)(1) provides:

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A)    citing to particular parts of material in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## ANALYSIS

The FDCPA was enacted in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA is considered a strict liability statute, *Kistner v. Law Offices of Michael P. Margelefsky*, 518 F.3d 433, 438 (6th Cir. 2008), and a consumer need only prove that the debt collector violated "any provision" of the Act to be entitled to damages. 15 U.S.C. § 1692k. Courts are required to analyze alleged FDCPA violations "through the lens of the least sophisticated consumer." *Gionis v. Javitch, Block & Rathbone LLP*, 238 Fed. App'x 24, 28 (6th Cir. 2007). The least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).

At issue here is one communication made by Defendant after Plaintiff had sent letters,

5

dated March 26, 2012, disputing the debt and asking that collection efforts cease.  Specifically,

Plaintiff alleges that Defendant's July 2015 collection notice violated the following provisions of

the FDCPA: §§ 1692e(2)(A), 1692c(c) and 1692g(b).

**A.      Defendant is Entitled To Summary Judgment On Its Bona Fide Error Defense**

Defendant does not dispute that it acted in violation of the FDCPA.  Instead, it relies on

the bona fide error defense as an exception to liability.  A debt collector's liability under the

FDCPA may be limited if certain conditions are met.  *Montgomery v. Shermeta, Adams & Von*

*Allmen, P.C.*, 885 F. Supp. 2d 849, 856 (W.D. Mich. 2012).  The FDCPA includes an affirmative

defense, set forth in § 1692k(c), that is commonly known as the bona fide error defense, which

provides as follows:

> A debt collector may not be held liable in any action brought under this subchapter if the
> debt collector shows by a preponderance of evidence that the violation was not
> intentional and resulted from a bona fide error notwithstanding the maintenance of
> procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  The bona fide error defense is an affirmative defense on which the debt

collector bears the burden of proof.  *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1034 (6th

Cir. 1992).  To qualify for the bona fide error defense, a debt collector must prove by

preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a

result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted

to avoid any such error.  *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 614 (6th Cir.

2009).

The Court shall grant Defendant's partial motion for summary judgment because Plaintiff

has failed to create a genuine issue of fact as to each element of the defense.

**1.      Subjective Prong: Whether The Violation Was Unintentional**

6

"The first element of the bona fide error defense is a subjective test that assesses the credibility of the debt collector's assertions that the FDCPA violation was not intentional." *Montgomery*, 885 F. Supp. 2d at 857.  To establish the subjective prong of the *bona fide* error defense, Defendant must "show that the violation was unintentional, not that the communication itself was unintentional." *Lewis v. ACB Business Services, Inc*., 135 F.3d 389, 402 (6th Cir. 1998).

Here, Plaintiff does not dispute that the alleged FDCPA violations were unintentional. Moreover, a review of the evidence establishes that there was no intent on Defendant's part to violate the FDCPA.  It remains undisputed that, because EMII supplied a different social security number for Plaintiff's second account, Defendant's system treated Plaintiff's 2015 account as a new account belonging to a different consumer.  As such, Defendant did not know that it was contacting the same consumer when it sent its July 8, 2015 collection notice.

### 2.    Objective Prongs: Whether The Error Was Bona Fide & Whether The Debt Collector Maintained Procedures Reasonably Adapted To Avoid Error

The second and third elements of the bona fide error defense are objective inquiries." *Id.* Generally, determining whether or not procedures are reasonable is a fact-intensive inquiry and is left to the fact-finder. *Narwick v. Wexler*, 901 F. Supp. 1275, 1282 N.D. Ill. 1995).  However, "[w]here the undisputed record establishes that the procedures in place are extensive and were adhered to, the matter may be resolved as a question of law." *Id.* (internal citations omitted). Importantly, "[t]he mere assertion of good intent, absent a factual showing of actual safeguards reasonably adopted to avoid violations of the FDCPA, is insufficient" to establish the bona fide error defense. *Jenkins v. Union Corp*., 999 F. Supp. 1120, 1141 (N.D. Ill. 1998).  The Court finds that Defendant has sufficiently established the objective prongs of the defense.

First, Plaintiff does not dispute that Defendant has established that the violation of the FDCPA resulted from an error that was bona fide. Instead, Plaintiff argues that Defendant has failed to establish the third prong of the bona fide error defense, which requires Defendant to maintain procedures reasonably adapted to avoid errors. In so doing, Plaintiff claims that Defendant has only identified one bona fide error in this case: the "misreporting of [Plaintiff's] social security number." (Pl.'s Resp. at 10). Plaintiff concludes that "it is *impossible* for Defendant to show that it has any procedures in place to avoid the *bona fide* error, because Defendant has no control over such errors by third-parties and offers no procedure to identify them." (*Id.*) (emphasis in original). Plaintiff further notes that Defendant's procedure of linking accounts to consumers through social security numbers is what caused Defendant to mistakenly create a second account for Plaintiff and violate the FDCPA.

Plaintiff's arguments are misguided for several reasons. First, Plaintiff is mistaken when she asserts that Defendant only identifies the bona fide error in this case as EMII's "misreporting of [Plaintiff's] social security number." Instead, Defendant's brief identifies the bona fide error as both: (1) EMII's submission of incorrect information; and (2) Defendant's act of contacting Plaintiff via letter in 2015. (*See* Def.'s Br. at 13-4, 19).

Second, Plaintiff overlooks the importance of the fact that, here, the creditor–as opposed to the debt collector–committed the clerical/factual error that caused Defendant to violate the FDCPA. "The Sixth Circuit has held that a debt collector may rely upon information provided by his client, and that § 1692k(c) will protect a debt collector who is not willfully blind to the inaccuracy of such information from liability directly attributable to the mistakes of the client." *Edwards v. McCormick*, 136 F. Supp. 2d 795, 804 (S.D. Ohio 2001) (citing *Smith v. Transworld,*

8

*Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992)); *see also Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 647 (D. Md. 2010) ("a misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client would be a bona fide error as defined under 15 U.S.C. § 1692k(c)").

Here, it was Defendant's practice to rely on creditors like EMII to place consumer accounts and placement data regarding the accounts with Defendant.  The placement data included information such as the amount to be collected, the consumer's name, social security number and other identifying information.  (Def.'s Ex. 2 at ¶ 6).  Defendant's procedure is to link accounts to consumers by a consumer's social security number.  (Def.'s Ex. 1 at ¶ 4). Linking accounts by social security numbers allows for the entire history of Defendant's interaction with a consumer to be consolidated into a single place.  (*Id.*).  Pursuant to Defendant's policy and procedure, one collector is primarily responsible for any accounts linked to a particular consumer.  (*Id.* at ¶ 5).  Each interaction with a consumer, whether system driven or collector driven, is noted in the applicable notes.  (*Id.*).  Account notes are updated based upon communications sent/received.  (*Id.* at ¶ 9).  Defendant also maintains a coding system that tracks activity in a consumer's account, which include codes indicating whether an account is deemed "active collection" or "no contact."  (*Id.* at ¶ 13).  It is undisputed that these procedures were adhered to here.

The Court does not find it unreasonable for Defendant to have relied upon the accuracy of EMII's placement data since EMII is the entity that would originally have access to this data in the first place.  Nor is it unreasonable for Defendant to employ a policy that treats two accounts, with different social security numbers, as belonging to two separate consumers.  A

9

consumer's social security number, unlike other contact information, is unique to each person and is a reliable way to identify someone.

Here, Plaintiff seeks to hold Defendant liable for a mistake that she claims is "impossible" to guard against. But, in so doing, Plaintiff disregards that Defendant is "not require[d] to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Charbonneau v. Mary Jane Elliott, P.C.*, 611 F. Supp. 2d 736, 743 (E.D. Mich. 2009) (internal citations and quotation marks omitted). Here, Defendant's practices and procedures were adhered to and were reasonably adapted to avoid Defendant's error, *i.e.,* contacting Plaintiff via letter in July 2015.

It is worth noting that Defendant only violated the FDCPA one time. After Plaintiff sent her cease and desist letters in March 2012, Defendant changed the status on Plaintiff's account to "no contact" and ceased all further collection efforts. Plaintiff did not resume collection efforts for over three years and resumed such efforts *only* because EMII incorrectly submitted a different social security number when it placed Plaintiff's account with Defendant in July 2015. Upon receiving Plaintiff's July 2015 cease and desist letters, Defendant changed the status of Plaintiff's account and ceased all collection efforts.

The Sixth Circuit's decision in *Lewis v. ACB Business Services Inc.*, further bolsters Defendant's position. In *Lewis*, the Sixth Circuit held that the defendant debt collector was entitled to the bona fide error defense where the alleged violation resulted from a clerical error made by the creditor-client as opposed to the defendant debt collector. *Lewis*, 135 F.3d at 401-02.

There, the plaintiff had defaulted on payments to American Express ("AMEX"). *Id.* at

395.  AMEX consequently referred the plaintiff's account to the defendant debt collector.

Collection efforts began in February 1993.  *Id.*  In March 1993, the plaintiff requested that such

communications cease.  *Id.*  Despite this, the defendant contacted the plaintiff on two additional

occasions.  *Id.*  The first communication was a letter sent in June 1993.  *Id.*  After the first letter

was sent to the plaintiff, Plaintiff's account was returned to the defendant for collection.  *Id.* at

396.  When AMEX returned the account, AMEX miscoded the account and conveyed that the

account was a new referral rather than a reopening.  *Id.*  As such, the defendant placed an initial

contact call to Plaintiff before the mistake was caught by the defendant's compliance officer.  *Id.*


In concluding that the bona fide error defense applied to the phone call, the Sixth Circuit

made it a point to note that the "[the defendant] in this case is not even responsible for

committing a clerical error; it was AMEX, and not [the defendant] that made the critical coding

error before the file was returned to [the defendant]."  *Id.* at 401.  The Sixth Circuit further noted

that the defendant's manual and computer systems were reasonably adapted to avoid and catch

the error in a short period of time.  *Id.*

Here, Plaintiff unpersuasively attempts to distinguish *Lewis* from the instant case by

stating that the creditor in *Lewis* miscoded the account as new, whereas in this case, it was

Defendant that miscoded the account.  This distinction is of no relevance.  Plaintiff disregards

the fact that in both *Lewis* and the instant case, the creditor committed a clerical/factual error

before the account was placed with the debt collector and that the creditor's error is what caused

the debt collector to act in violation of the FDCPA.

Plaintiff further disregards that in *Lewis*, the creditor provided the defendant debtor with

11

accurate identification information.  Here, the creditor provided Defendant inaccurate identification information, which is why the account was treated as new in the first place.  This is a critical difference that works in Defendant's favor.

The Court finds that there is no genuine issue of fact as to whether Defendant merits the bona fide error defense.

**CONCLUSION**

For the foregoing reasons, the Court shall **GRANT** Defendant's partial motion for summary judgment.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  January 24, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 24, 2017, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

12